**McCORKLE et al. v. HAMILTON.**

No. 14189.

Court of Civil Appeals of Texas.
Fort Worth.

March 14, 1941.

Rehearing Denied April 25, 1941.

Cecil D. Redford, of San Antonio, Charles O. Betts, of Austin, and A. K. Montgomery, of Santa Fe, N. M., for appellants.

Clark, Craik, Burns & Weddell and J. Harold Craik, all of Fort Worth, for appellee.

BROWN, Justice.

Appellee, Marie B. Hamilton, a feme sole, made a contract with Lloyds America, in the year 1929, whereby she, under what is familiarly known as a "Lloyds Plan", agreed to become one of the insurance underwriters of such insurance company, and she executed her promissory notes payable on demand to the attorneys in fact, who were acting for said company, in the sum of $5,000. One note so executed was for the sum of $1,500, and was a nonnegotiable note. The other note is for the sum of $3,500, payable on demand after thirty days' notice, and is a negotiable note, secured by a deed of trust on certain real property situated in Tarrant County, Texas.

On July 20, 1932, appellee, with the consent of the said attorneys in fact, reduced her subscription to the sum of $3,500, had her said $1,500 note returned to her, and then and there executed a second and new underwriter's agreement and power of attorney covering the subscription made by her in the sum of $3,500.

On March 17, 1939, through action taken by the Attorney General of Texas, Lloyds America was thrown into a receivership, by the 53d Judicial District Court of Travis County, Texas, and Sam McCorkle was made receiver of said company.

Theretofore Lloyds America entered the State of New Mexico, in the year 1935, for the purpose of transacting business there, and being required by the laws of such State to deposit the equivalent of $25,000 with the State Treasurer thereof, the said attorneys in fact, among other assets of the company, transferred and assigned to said Treasurer appellee's said note and the lien securing same.

On May 11, 1939, the First Judicial District Court of Santa Fe County, State of New Mexico, appointed George M. Biel receiver of and for the assets of said company in said State.

On September 22, 1939, appellee brought suit in the District Court of Tarrant County, Texas, and named Robert Hicks, the attorney in fact for said company, and the two said receivers, as defendants. She prayed that a nonresident notice be served upon the New Mexico receiver, which was done.

In her petition she alleged that for the purpose of inducing her to become a subscriber to said Lloyds America, its agent and solicitor represented to her that it was a thoroughly solvent insurance company, that it was making big money and would make for her at least 30 per cent per year on any sum for which she became an underwriter; that there would never be any personal liability on her part; that she could withdraw at any time by giving written notice of her intent to do so within 90 days from April 24, 1929. That she executed the note and deed of trust lien in question.

She further alleged: "That after said written notice of her withdrawal as an underwriter, defendants again, through their attorneys in fact, treated her as having withdrawn from said concern as an underwriter, and she had withdrawn on said date, and never thereafter participated in the management or control of said business, although defendant at times demanded that she pay said note, which she always declined to pay. That some time in the year 1932, defendant, acting through its attorneys in fact, again attempted to treat plaintiff as an underwriter, and demanded that she pay said note, which she again refused to pay."

She further alleged that the company's agent stated to her that the company's business was in a flourishing condition; that the premiums from the policies were more than sufficient to take care of the business, and would pay big dividends of at least 30 per cent per annum and that she would never have to pay any of said note and that after two years she could draw down the note and the deed of trust would be released.

She alleged that all of the representations so made to her were false; that she believed them and relied upon them; and was misled by them to her damage.

She alleged that the note and lien were barred by limitations; that the New Mexico receiver is demanding payment of the note executed by her, and that there is danger that the Texas receiver will attempt to collect the note and foreclose the lien securing it; and she prayed for a cancellation of the note and lien, and a judgment against all the defendants holding the note and lien void.

The Texas receiver answered by a plea in abatement, urging that the District Court of Travis County, Texas, alone has jurisdiction of the subject matter, and by general demurrer and general denial.

The New Mexico receiver came into the trial court and answered by a general demurrer, several special exceptions, a general denial, and pleaded the fact of appellee's subscription to the insurance company, the execution of the note and lien, the application to do business in New Mexico; the transfer of the note and lien to the State Treasurer of such State; the insolvency of the company; the receivership proceedings and his appointment as receiver and the necessity for the collection of the note to pay the obligations incurred in the State of New Mexico; estoppel on the part of appellee to deny liability, under the facts, and a complete cross-action for affirmative relief by way of judgment on the note and a foreclosure of the deed of trust lien.

Appellee answered such cross-action by a general demurrer, general denial, plea of limitations, and pleaded fraud as against the receiver's right of recovery, but there is urged no plea in abatement—no plea raising the issue of the right of the New Mexico receiver to ask for such affirmative relief as is sought by the cross-action.

The cause being tried to the court, judgment was rendered cancelling the said note, the deed of trust and the underwriter's agreement executed by appellee, removing the cloud from her title to the real property in controversy and denying the New Mexico receiver any right of recovery on his cross-action. Both receivers excepted and gave notice of appeal.

We are of opinion, as is stated in appellants' brief, that there are three controlling issues presented: (1) Was appellee estopped to assert fraud, even if fraud were established, as against appellants who are receivers representing creditors of an insolvent association? (2) Was the note barred by the four-year statute of limita-

442

tions, Vernon's Ann.Civ.St. art. 5527? (3) Was the New Mexico receiver authorized to seek judgment on the note, with foreclosure of the said lien?

We are of opinion that the first question should be answered in the affirmative, the second in the negative and the third in the affirmative, and we take them up in their inverse order.

Appellee insists that the New Mexico receiver is wholly without legal authority to ask for affirmative relief in the courts of Texas, and that the Texas receiver not having purported to act in the capacity of ancillary receiver for the estate being administered under receivership proceedings instituted in New Mexico, and not having asked for affirmative relief, the trial court properly denied the New Mexico receiver the right to recover on his cross-action.

Appellee was seeking to cancel and have annulled a certain promissory note executed by her and the deed of trust lien executed by her to secure the payment of the note, at a time when the note and deed of trust were physically located in the State of New Mexico and were in the custody of a receiver, appointed by a court of competent jurisdiction in New Mexico to take charge of and administer upon the estate of the insolvent association known as Lloyds America, which association had been doing business in New Mexico and which had taken the note and the instrument executed to secure it to New Mexico as a part of its assets.

Appellee seems to have recognized the fact that no court in the State of Texas had the power to cancel this note and the lien securing it unless the then owner and holder of the note and lien was brought into and under the jurisdiction of the Texas court in which she brought her suit, in some manner consistent with the laws of this state.

So believing this to be fundamentally sound, appellee sought to make the New Mexico receiver a party defendant and had him served, in his capacity as receiver, by and through a nonresident notice.

The New Mexico receiver took cognizance of the process and came before the court out of which it issued and answered fully and filed a cross-action asking for affirmative relief on the very instruments that appellee asks the court to cancel while in such receiver's hands.

■ The appellee's suit cannot be said to be one in rem. The mere fact that the cancellation or the enforcement of a mortgage lien upon land, as an incident to the note that is the subject of controversy, was before the trial court does not serve to make appellee's cause of action one in rem.

■ It is well established that a suit to foreclose a mortgage is only quasi in rem, and a judgment in such suit is binding only upon those who are parties to the suit and their privies. Edinburg Irr. Co. v. Paschen et al., Tex.Com.App., 235 S.W. 1088, adopted by Sup.Court.

In Oliver v. Clarke, 5 Cir., 106 F. 402, 45 C.C.A. 360, the court held that a receiver appointed in another State may sue for land in Texas that had been conveyed to him.

We see no distinction in principle between the rights in the instant suit and those, disclosed by the opinion, in the Oliver case.

In Lloyds Ins. Co. of America v. State, Tex.Civ.App., 98 S.W.2d 259, writ refused, it was held that where an ancillary receiver has been appointed a domestic court may permit intervention by a foreign receiver as a matter of comity.

Assuredly there was no necessity for an ancillary receivership in the matter before us. A receiver had been appointed in Texas to take charge of the association's properties and assets in Texas and a receiver had been appointed in New Mexico for a similar purpose as to assets and properties in that State. No contention is here made that either appointment was without authority.

■ If a foreign receiver may be properly permitted to intervene in an ancillary receivership proceeding in Texas, on the theory that there may be assets remaining in the hands of the ancillary receiver, after distribution, to which the foreign receiver would be entitled, then it seems clear to us that there being a receiver appointed in Texas to take charge of the Texas property and a receiver appointed in New Mexico to take charge of the property in New Mexico, and the appellee having brought suit in Texas as against both such receivers to cancel and hold for naught a note and deed of trust lien she executed, and at the time of bringing suit the note and lien were owned and held by the New Mexico receiver, such receiver could not only resist appellee's right to cancel and avoid the note and lien, but he could, by proper cross-action, seek affirmative relief as the person

who had the right to enforce the obligations lawfully in his possession.

Here we have the plaintiff asking the trial court to compel the New Mexico receiver to come into court and defend the suit, and when such defendant appears and resists the plaintiff's suit and asks for affirmative relief, we find the plaintiff asserting that this defendant has no right to ask the court to give him affirmative relief.

We see no substantial difference between the right to successfully resist the plaintiff's suit to cancel the note and lien and the right to enforce the obligations sought to be avoided.

The plaintiff invoked the jurisdiction of the District Court of Tarrant County, Texas, for the purpose of cancelling the note and lien and, if she is unable to cancel them, it follows that the judgment would be that she is obligated to perform them, and judgment requiring performance would follow as an incident, if the owner and holder of the note prayed for such relief, either in the suit brought by the plaintiff, or in any suit brought by the holder of the note.

Our holding here is not in conflict with the holding of the Supreme Court in Farm & Home Savings & Loan Ass'n of Missouri v. Breeding et al., 131 Tex. 518, 115 S.W.2d 615, nor is it in conflict with the other authorities cited in appellee's brief, including Art. 2313, R.C.S.

We do not believe that it is necessary to a disposition of the issue raised, to call attention to the fact that no plea in abatement was urged by the plaintiff against the cross-action, but such is the record before us, and, unless it is fundamental error for the trial court to take cognizance of and consider the receiver's cross-action, it is certain that the plaintiff cannot be heard to raise the issue for the first time in the appellate court.

We see no fundamental error presented.

The next question we review is whether or not the note is barred by limitations.

■■ The contract entered into by appellee was one whereby she guaranteed the payment of the sum of $3,500, or so much thereof as became necessary to discharge the obligations incurred by the association, in the event its earnings and assets were not sufficient to meet its obligations. Tersely stated, that is the nature of the contract that was made.

Such a contract contemplates that the note executed would not become due until the condition arose making it necessary to call upon the maker to pay.

Under such a contract, the note being one payable on demand, the holder of the note was obliged to make demand within a reasonable time after the condition arose necessitating payment of the note. 8 Corpus Juris Sec. 602, p. 406; 10 C.J.S., Bills and Notes, § 247; French v. Hill, Tex.Civ.App., 69 S.W.2d 828, citing Cavitt v. Amsler, Tex.Civ.App., 242 S.W. 246, writ dismissed.

The record discloses that no demand was made on appellee until August, 1939, and that the New Mexico receiver then made demand upon her to pay the note to meet the obligations incurred by the then insolvent association.

We believe that demand was made within a reasonable time and within the time contemplated by the parties to the contract.

■ The last question for discussion is the issue of whether or not the appellee is estopped from pleading fraud inducing her to make the contract.

In the first place, we do not believe that the evidence adduced by the appellee raises the issue of fraud that would render the contract absolutely void.

At best, giving appellee's testimony the strongest construction in her favor, in our opinion, the evidence discloses circumstances that might make the contract voidable only.

An outstanding opinion is found in Forman v. Irby et al., Tex.Civ.App., 115 S.W.2d 1229, writ refused.

Forman brought suit to cancel his subscription contract executed by him to Lloyds of America (an association similar to the one here involved), after such association became insolvent and a receiver had been appointed for it.

The basis of his suit was fraud inducing him to enter into the contract.

It was admitted that Forman was induced to enter into the obligation through fraud, but Mr. Justice Alexander, speaking for the Waco Court of Civil Appeals, lays down the rule that the contract being voidable, Forman brought his suit too late and was estopped from denying liability as against the rights of the creditors of the insolvent association, represented by the receiver thereof.

The record discloses that appellee knew all of the facts she relies upon to establish fraud, inducing her to enter into the contract, several years before she brought her suit to cancel and rescind, and long before the association, to which she was a subscriber, entered the State of New Mexico for the purpose of writing insurance contracts in such State, and necessarily long before the obligations of the association were incurred in the State of New Mexico.

What we have concluded is not in conflict with the holding in Harris et al. v. Prince, 132 Tex. 231, 121 S.W.2d 983, 986, Com.App., adopted by Supreme Court.

We do not construe that opinion as holding that the use of the word "Lloyds" in the subscription contract signed by Mrs. Harris was sufficient to put the public on inquiry as to the financial responsibility of the subscribers and the validity of the contracts made by the underwriters, as is contended by appellee.

The court said: "The use of the word 'Lloyds' (see Article 5015) was sufficient to advise the public that policies of insurance were being issued under the Lloyd's Plan, which merely contemplated individual liability of the several underwriters; and thus the public was put upon inquiry, both as to the financial responsibility of each underwriter, and of the authority of each to engage in such an enterprise. Under these circumstances, there could be no estoppel as to Mrs. Harris."

Mrs. Harris was a married woman who undertook to become a subscriber and underwriter without the joinder of her husband.

In disposing of the issue the opinion further states: "There is no provision of law which permits a married woman to execute contracts of insurance and thereby bind herself or her separate estate, unless it be said that under Article 4626 she might be authorized to engage in writing insurance. There is no claim that said article was complied with in this instance."

The contract made by Mrs. Harris was unenforceable because of the reasons stated.

We have no such situation before us. Mrs. Hamilton was at all times a feme sole and had the authority to make the contracts executed by her.

Believing that the New Mexico receiver had the right to bring the cross-action for the benefit of the creditors of the association, the judgment of the trial court is reversed and judgment is here rendered in favor of appellant Biel, receiver, for the principal sum of the note sued upon, with interest and attorney's fees, and for foreclosure of the deed of trust lien as prayed for, on the cross-action, and that appellee take nothing as against the said receivers, or either of them.